## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO
_____

RICHARD A. CARRIERE,

      Plaintiff,

vs.                                                                      No. Civ. 97-986 JP/WWD

KENNETH S. APFEL,
COMMISSIONER OF SOCIAL SECURITY,[1]
      Defendant.

### MAGISTRATE JUDGE'S PROPOSED FINDINGS
### AND RECOMMENDED DISPOSITION
### Proposed Findings

    1.  This matter comes before the Court upon plaintiff's Motion to Reverse and Remand

for a Rehearing, filed February 23, 1998 [8-1].  The Commissioner denied plaintiff's request for

Social Security Disability Insurance.  Plaintiff, age 55, alleges a disability which commenced

January 1, 1991, due to a mental impairment caused by brain seizures, and a physical impairment

due to peripheral arterial disease.  He has had experience working as a cost control analyst,

business manager, book distributor, income tax preparer and inventory clerk.  Tr. at 254-55.

    2.  After conducting an administrative hearing, the Commissioner's Administrative Law

Judge ("ALJ") denied Mr. Carriere's application, concluding that plaintiff is able to perform his

past relevant work as a tax preparer and is therefore not disabled.  The Appeals Council denied

Mr. Carriere's request for review of the ALJ's decision, thus the ALJ's decision is the final

_____

[1]  President Clinton appointed Kenneth S. Apfel Commissioner of Social Security as of
August 29, 1997.  Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Kenneth S.
Apfel should be substituted as defendant for Acting Commissioner John J.Callahan, who was the
appropriate party at the time of the underlying decision.  No further action need be taken to
continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42
U.S.C. § 405(g).

decision of the Commissioner.  Plaintiff now seeks review of that final decision pursuant to 42 U.S.C. §405(g).

3.   The standard of review in social security appeals is whether the Commissioner's final decision, in this case the ALJ's decision, is supported by substantial evidence.  Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993) (citations omitted).  Additionally, the Commissioner's final decision can be reversed if the ALJ failed to apply the correct legal tests.  Id. (citation omitted).

4.   Plaintiff raises the following allegations of error with respect to the ALJ's decision: (1) the ALJ's Listing of Impairments analysis is contrary to law; (2) the ALJ's credibility analysis was contrary to law; and (3) the ALJ's findings regarding plaintiff's ability to perform past relevant work was contrary to law.

5.   "To qualify for disability benefits, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity."  Thompson at 1486 (citing 42 U.S.C. §423 (d)(1)(A)). Social Security Regulations require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications.  Id.; see 20 C.F.R. § 404.1520(a - f).  The sequential evaluation process ends if at any step the Commissioner finds that the claimant is disabled or not disabled.  Id. (citations omitted).

6.   At the first four levels of the evaluation, the claimant must show:  (1) that he is not working; (2) that he has an impairment or combination of impairments severe enough to limit the ability to do basic work activities; (3) that the impairment meets or equals one of the listing of impairments in 20 C.F.R. Pt. 404, Subpt.P, App.1; or (4) that he is unable to perform work done

2

in the past.  At the fifth step, the Commissioner must produce evidence regarding the claimant's ability to perform other work.  Reyes v. Bowen, 845 F.2d 242, 243 (10th Cir. 1988).  In this case, the ALJ ended his analysis at step four.

      7.  Mr. Carriere has severe arterial disease, for which he had an aortic-iliac bypass in February 1991.  Tr. at 161, 211.  Plaintiff has worked primarily at desk jobs.  He had his first seizure in 1988 and "frequent episodes of losing consciousness" from February to June of that year.  The seizures have been diagnosed as secondary to alcohol withdrawal.  Tr. at 144, 164, 168.

      8.  As early as 1990, the record contains evidence of intermittent claudication in plaintiff's legs.  Tr. at 195-96.  In February 1994, Mr. Carriere described his main problem as pain in the right leg when he engaged in strenuous activity.  Tr. at 195-96.  Dr.Snell, who appears to be plaintiff's treating physician, stated that Mr. Carriere has "severe arteriosclerosis obliterans" with severe aortoiliac stenosis.  Tr. at 216.  The report indicates that minimal exertion by plaintiff produces dyspnea, and that intermittent claudication poses a problem with minimal walking.  Tr. at 216-17.  Dr. Snell also opined that plaintiff has "significant problems with mental acuity."  Tr. at 218-19.  Plaintiff's complaints of burning arm and neck pain were diagnosed in August 1995 as "mild central spinal stenosis at the C-6 and C-7 levels," and "marked spondolytic narrowing. . . ." Tr. at 233.

      9.  Mr. Carriere lives with his wife, whom he drives to and from work, and is able to do some of the housework such as vacuuming and making the beds.  Twice a week he shops for food.  He cooks, but eats out frequently.  Tr. at 1009.  Mr. Carriere spends about 12 hours a day watching TV, although his other activities include visiting with a few close friends at the bar and

throwing darts several times a week.  Tr. at 112, 221.  He claims that he has trouble concentrating because he gets tired and out of breath easily and that his memory is not as good as it used to be. Tr. at 111.  He takes Persantine, a thrombolytic agent, and aspirin for pain, although he says that he was never free from pain.  Tr. at 117, 262.

10.   At the hearing, Mr. Carriere told the ALJ that he experiences a "tightening and stiffening" pain in his legs, hips and lower back when he tries to walk too far, and occasionally when he is just sitting or standing.  Tr. at 258, 260.  He can go a distance of about a block before his hips start bothering him, a couple of blocks before his legs hurt, and a half a mile before his right foot and toes go numb and he has shortness of breath.  Tr. at 259.  He stated that he has to shift his position every 15 or 20 minutes to prevent pain in the buttock area.  Tr. at 260.  This shifting does not necessarily mean needing to stop when driving or standing when sitting, but just lifting himself temporarily off the seat.  Tr. at 261.

11.   Plaintiff explained to the ALJ that his degenerative disc problem started a few years before the hearing, starting as neck pain and then spreading to his arm and shoulder.  Tr. at 262. He claims the pain is constant in his neck, and a Philadelphia collar which he uses about twice a month, alleviates pain in his shoulder, arm, wrist and right thumb.  Tr. at 263.  Plaintiff stated that when he has the pain, he can't even lift a cup of coffee with his right hand.  Before he got the collar, he had trouble lifting his arm to brush his teeth.  Tr. at 264.  Without the pain, plaintiff said he can lift about a gallon with both hands and can reach over his head.  Tr. at 264-65.

**First Alleged Error**

12.   Plaintiff first alleges that the ALJ's Listing of Impairments analysis is contrary to law. By the plaintiff's own breakdown of the objective evidence, his impairment does not meet the

listed requirements for listing § 4.12(B)(2).  See Mem. at 4.  Arguing that the ALJ should have looked at an *equivalent* listing does not apply here, nor would it have been to plaintiff's advantage for the ALJ to have done so.  The "equivalency" analysis has no use where the alleged impairment matches one of those listed in the regulations.   Brainard v. Sec'y of Health & Hum. Serv., unpubl. op., 1994 WL 170783 at *2 (10th Cir. Okla).

13.   Also, even when a claimant argues that his impairment equals a listed impairment, his symptoms, signs, and laboratory findings must still be equivalent in severity to all of the criteria for the "listed impairment most like the individual's impairment."  Sullivan v. Zebley, 493 U.S. 521, 532 (1990); 20 CFR S 416.926(a) (1989).  The changes in ankle systolic blood pressure may come close but simply do not meet the requirements under § 4.12(B)(2).[2]

14.   I agree with plaintiff that the ALJ was not as specific as he could have been in his analysis regarding § 4.12, although he did spend considerable time examining plaintiff's alleged mental deficiencies relating to a listed mental impairment, which plaintiff had also alleged in his application for benefits.  Tr. at 30-31.  I would think it evident, however, that when a plaintiff alleges an impairment of "peripheral arterial disease," that the ALJ has at least considered that particular listed impairment in stating that "the claimant has no impairment which meets the criteria of any of the listed impairments. . . ."  Tr. at 28.  Remanding for the purpose of additional specificity in this regard is pointless also because there is no dispute over the mathematical computations involved in measuring the blood pressure ratios.  The results plainly show that the

---

[2]  Similarly, the resting ankle/brachial systolic blood pressures do not match what is necessary for § 4.12, either.  Tr. at 238.

plaintiff does not meet the listed requirements under § 4.12.[3]

**Second Alleged Error**

15.   Plaintiff next alleges that the ALJ's credibility analysis was contrary to law and is not supported by substantial evidence.  I agree with plaintiff.  Although the ALJ started out by citing to the correct legal framework, his decision does not contain more than a superficial look at Mr. Carriere's daily activities and a cursory examination of the objective medical evidence.

16.   The ALJ was not precluded from looking at plaintiff's daily activities.[4]  The ALJ may consider the claimant's activities in discounting subjective complaints.  Gossett v. Bowen, 862 F.2d 802, 807 (10th Cir. 1988); Talbot v. Heckler, 814 F.2d 1456, 1462 (10th Cir. 1987).  However, a person who engages in work must be capable of performing on a reasonably regular basis.  Broadbent v. Harris, 698 F.2d 407 (10th Cir.1983) (holding that sporadic diversions do not establish that a person is capable of engaging in substantial gainful activity).  Here, the only objective medical evidence the ALJ relied on was a report by the surgeon who performed the

---

[3]  This evidence came in subsequent to plaintiff's insured status period.  Tr. at 238, 246. However, I need not decide whether or not this constitutes a retrospective diagnosis which supports the existence of actual disability prior to the expiration of Mr. Carriere's insured status, since the evidence does not meet the criteria for a listed impairment.  See Potter v. Sec'y of Health & Hum Serv., 905 F.2d 1346, 1349 (10th Cir. 1990).  Plaintiff's insured status ended on March 31, 1995.  Tr. at 92.

[4]  It is true that Mr. Carriere stated in various places that he plays golf occasionally Tr. at 110, 112.  He told Dr. Abejuela in February 1994 that he was only able to play nine holes.  Tr. at 206.  However, he told Dr. Snell a couple of months later that he could then walk only short distances, and couldn't play golf at all.  Tr. at 232.  At the hearing, he told the ALJ that he "used to occasionally go to a driving range."  Tr. at 267.  While this information may not be critical to plaintiff's functional capacity for sedentary work, it does weaken the substantial evidence threshold for the ALJ's reliance on plaintiff's daily activities used to determine credibility.

bypass in 1991, which stated that Mr. Carriere was discharged with good pulses in his feet, and Dr. Burkett's August 1995 report indicating that plaintiff has "mild claudication" symptoms.  <u>Tr. at 155, 246</u>.[5]

17.   This a case where the objective medical evidence is inconsistent with plaintiff's symptoms only if one ignores what appears to be reports of plaintiff's treating physician, Dr. Snell.  <u>Cmp.</u>, <u>Talley v. Sullivan</u>, 908 F.2d 585, 587 (10th Cir. 1990) (medical records must be consistent with the nonmedical testimony as to the severity of the pain).  It is not clear why the ALJ did so.  The ALJ was obligated to consider all of the evidence, although he need not discuss "every piece of evidence."  He must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects.  <u>Vincent ex rel. Vincent v. Heckler</u>, 739 F.2d 1393, 1394-95 (9th Cir. 1984); <u>Clifton v. Chater</u>, 79 F.3d 1007, 1009-10 (10th Cir. 1996) (citing <u>Zblewski v. Schweiker</u>, 732 F.2d 75, 79 (7th Cir. 1984) ("a minimal level of articulation of the ALJ's assessment of the evidence is required in cases in which considerable evidence is presented to counter the agency's position.").

18.   Dr. Snell's functional capacity assessment dated September 1994 stated that plaintiff could not stand, walk or sit for a total of six hours, the latter being a distinct consideration when considering a claimant's ability to perform sedentary work.  <u>Tr. at 219</u>.  This evaluation contrasted with the physical residual functional capacity assessment completed by the agency in March 1994 which stated that plaintiff could in fact, sit, stand and walk for a total of six hours a day.  <u>Tr. at 52</u>.  As noted above (see ¶ 8), Dr. Snell diagnosed plaintiff with *severe*, not mild,

---

[5]  The ALJ does not mention that this report was subsequent to the date plaintiff was last insured.

arterial disease.  The ALJ was obligated to give his reasons for discounting Dr. Snell's opinions.

19.  Moreover, upon finding that plaintiff retains the functional capacity for sedentary work, the ALJ conceded that plaintiff needs to change positions while working.  <u>Tr. at 30</u>.  This conclusion is puzzling and underscores the insufficiency of the noncredibility finding.  It does not seem consistent with the ALJ's finding of noncredibility as to plaintiff's pain symptoms, since plaintiff attributed his need for frequent postural changes to the pain in his arm, shoulder and buttocks.

20.  Also, even if the ALJ found plaintiff to be noncredible with regard to his complaints of pain, but somehow credible as to his need to shift positions, he should have inquired further at the hearing into whether such opportunities were available in plaintiff's past relevant work as tax preparer, which the ALJ ultimately found plaintiff could still do.  If necessary, the ALJ could have consulted a vocational expert, even though that is not required at a step four level.  <u>Winfrey v.Chater</u>, 92 F.3d 1017, 1020 (10th Cir. 1996); <u>SSR 82-62; 82-61</u>; <u>see</u> <u>also</u> <u>Ragland v. Shalala</u>, 992 F.2d 1056, 1059 (10th Cir. 1993) (where a claimant cannot sit or stand for prolonged periods of time, the ALJ must consult a vocational expert before making a determination).  The case should be remanded to conduct a proper credibility determination.

**Third Alleged Error**

21.  Last, plaintiff claims that the ALJ's findings regarding plaintiff's ability to perform past relevant work was contrary to law.  At step four, the claimant retains the burden of showing that he is  disabled at step four, but the ALJ has a duty "of inquiry and factual development." <u>Washington v. Shalala</u>, 37 F.3d 1437, 1442 (10th Cir. 1994) (citing <u>Henrie v. U.S. Dept. of Health & Hum. Servs.</u>, 13 F.3d 359, 361 (10th Cir. 1993); <u>accord</u>, <u>Winfrey v. Chater</u>, 92 F.3d

1017 (10th Cir. 1996); SSR 82-62 (dictating that Secretary make the necessary findings at phases two and three of the step four inquiry).

22.   The ALJ must obtain adequate "factual information about those work demands which have a bearing on the medically established limitations." Winfrey, 92 at 1023.     At step four, the ALJ engages in a comparative assessment of the claimant's residual functional capacity and the demands of the work the claimant has done in the past to determine whether the claimant can do his past relevant work.  He must specifically analyze the impact the impairments have on the claimant's ability to do the work he has previously done.  Hinkle v. Apfel, 132 F.3d 1349 (10th Cir. 1997); see 20 C.F.R. S 1520(e) (other citations omitted).

23.   I find that the ALJ conducted a satisfactory inquiry into the first phase of a step four analysis regarding plaintiff's residual functional capacity.  Winfrey, 92 F.3d at 1023.  He posed questions to the plaintiff at the hearing about plaintiff's functional limitations.  See, e.g., Tr. at 258, 261, 264.  However, for the second phase, the ALJ failed to adequately investigate the physical demands of Mr. Carriere's past relevant work as a tax preparer, which the ALJ found he can still do.  For example, other than lifting requirements of a past job, Tr. at 255, there were no questions concerning the postural requirements of the job.

24.   Because the ALJ's inquiry in this second phase was faulty, a proper conclusion could not be made at the final phase, i.e., whether plaintiff has the ability to meet the job demands found in phase two "despite the mental and/or physical limitations found in phase one." Id. at 1023; (citing Henrie v. United States Dep't of Health & Hum. Servs., 13 F.3d 359, 361 (10th Cir. 1993); SSR 82-62.

25.  I note here that in his brief, plaintiff does allege error from any findings related to a

mental impairment, either from seizures or concentration deficiencies.  Nevertheless, on remand, the ALJ is required to look at all the specifics of plaintiff's past relevant work to determine if Mr. Carriere is still capable of still performing it.[6]  At the same time, should the inquiry proceed to step five, it would be proper for the ALJ to take into account plaintiff's alcohol use and any effect it might have on plaintiff's mental deficiencies, in light of the new amendments.[7]

26.  In sum, I find no error in the ALJ's analysis at step two for the listing of impairments.  However, the ALJ's credibility analysis was based on insufficient evidence, either by failing to consider objective medical evidence which was contrary to the agency position, or to omit reasons for discounting this evidence.  Finally, I find that the ALJ's findings regarding plaintiff's ability to perform past relevant work was contrary to law in that it was deficient in the second phase of inquiry.

---

[6]  The record contains reports from three psychiatric consultations: July 1989, February 1994 and September 1994.  Tr. at 175, 207, and 223.  None of these reported the existence of any mental impairment other than difficulties which would be resolved by "taking care of the withdrawal reactions."  Tr. at 175.  Although plaintiff does not allege a mental impairment as his disability, the fact that his alcohol use is ongoing and related to some deficiencies in concentration, e.g., is further reason why such problems should not be considered in evaluating their impact on plaintiff's ability to work.

[7]  On March 29, 1996, Congress enacted an amendment to the Social Security Act which provides that an individual will not be considered to be disabled if alcoholism or drug addiction is a contributing factor material to the Commissioner's determination that the individual is disabled.  P.L. 104-121 §§105(a)(1) & (b)(1), amending U.S.C. §§ 423(d)(2) & 1382(c).  Alcoholism is not considered to be a contributing factor material to the determination of disability only when the remaining limitations *by themselves* are disabling, i.e., when they are "independent" of the alcoholism.  § 404.1535(a)(2)(ii).  In other words, there cannot be a finding of disability when the impairment is caused by alcohol ingestion and when the impairment would stop if the claimant stopped drinking.  See 20 C.F.R. §§ 404.1535 & 416.935 ("key factor" in determining whether alcoholism is material is whether the individual still would be found disabled if alcohol or drug use were to stop).

**Recommendation**

I recommend that plaintiff's Motion to Reverse and Remand for a Rehearing [8-1] be granted so that the Commissioner can (1) conduct a proper credibility determination and (2) conduct a step four analysis, inquiring into the specific demands of plaintiff's past relevant work as a tax preparer in order to determine whether plaintiff can perform this job, and if necessary, proceed to step five.  Timely objections to the foregoing may be made pursuant to 28 U.S.C. § 636(b)(1)(C).


UNITED STATES MAGISTRATE JUDGE

11